UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LISA A. JOHNSON,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. C17-0362-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Lisa A. Johnson proceeds through counsel[1] in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

/ / /

---

[1] Counsel for plaintiff did not comply with the requirement to list the specific errors alleged beginning on the first page of the opening brief, and to not rely on a "general statement of an issue, such as 'the ALJ's decision to deny benefits is not supported by substantial evidence[.]'" (Dkt. 13 at 2.) As stated in the Scheduling Order, assignments of error not properly listed "will not be considered or ruled upon." (*Id*.) However, the Court will, in this instance, address the errors alleged elsewhere in plaintiff's brief. The Court will not do so in any future non-compliant filings from counsel.

ORDER
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1967.[2] She completed the ninth grade and previously worked as a deli counter worker, automobile service station attendant, fast-foods worker, cook, and home health aide. (AR 97-100.)

Plaintiff protectively filed for DIB in January 2013 and for SSI in June 2012, alleging disability beginning October 1, 2007. (AR 272-81.) She remained insured for DIB through March 31, 2010, requiring her to establish disability on or prior to that "date last insured" (DLI). 20 C.F.R. §§ 404.131, 404.321. Her applications were denied initially and on reconsideration.

On August 6, 2014, ALJ Laura Valente held a hearing. (AR 41-56.) Because plaintiff appeared without counsel, the ALJ postponed the hearing. The ALJ held a second hearing on May 21, 2015, taking testimony from plaintiff and a vocational expert (VE). (AR 57-107.) Plaintiff appeared at that hearing with counsel and amended the alleged onset date to March 1, 2010. On July 27, 2015, the ALJ issued a decision finding plaintiff not disabled. (AR 14-35.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 12, 2017 (AR 1-8), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

---

[2] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's degenerative disc disease of the lumbosacral spine, anxiety disorder, not otherwise specified, and affective disorder. Step three asks whether the impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift twenty pounds occasionally and ten pounds frequently; sit eight hours total and stand and walk six hours total in an eight-hour workday; had no postural limitations; could occasionally use right lower extremity to push and pull, such as for operation of foot pedals; and must avoid concentrated exposure to extreme cold and hazards, such as heights and dangerous moving machinery. The ALJ found plaintiff had sufficient concentration in two-hour increments with usual and customary breaks throughout the day; able to work superficially and occasionally with the general public, meaning she can be a greeter and refer the public to coworkers, but is not herself having to resolve their demands or requests; can work in the same room with an unlimited number of workers, but should not work in coordination with them; and can maintain work attendance and punctuality with simple, repetitive task work and with other restrictions in the RFC. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a small parts assembler, cafeteria attendant, and housekeeping cleaner.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in evaluating medical opinions and assessing her mental RFC and, as a result of those errors, gave flawed hypotheticals to the VE. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Medical Opinions

Plaintiff avers error in the ALJ's reliance on the opinions of non-examining State agency physicians over the opinions of treating providers. Specifically, she points to opinions of Dr. Guillermo Rubio and Dr. Drew Stevick finding her able to perform light work (AR 150-51, 177-88), and opinions of Dr. Rory Laughery and mental health practitioner Diana Patalagoyti limiting her to sedentary work (AR 410-11, 380-81). Plaintiff also argues the opinion of consultative

examining physician Dr. Phan should have been rejected. (AR 634-36.)

Under the regulations applicable to plaintiff's case, physicians are deemed "acceptable medical sources," while a mental health practitioner constitutes an "other source." 20 C.F.R. §§ 404.1502, .1513, 416.902, .913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[3] As a general matter, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where the record contains contradictory medical opinions, as in this case, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Less weight may be assigned to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and their opinions may be discounted with reasons germane to each source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited cases omitted).

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

---

[3] New regulations effective after March 27, 2017 include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," other licensed heath care workers as "medical sources," and others as "nonmedical sources." 20 C.F.R. §§ 404.1502(a), (d), (e), 416.902(a), (d), (e).

ORDER
PAGE - 5

In this case, the ALJ accorded partial weight to the October 2008 opinion of Dr. Laughery and the April 2009 opinion of Patalagoyti. (AR 29-30.) The ALJ described the opinions as temporarily limiting plaintiff to sedentary work due to back dysfunction, and reflecting limitations in concentration, pace, and social interaction due to anxiety and mood disorders. She construed the record to reflect that both of these opinions, and other opinions from Patalagoyti, came "from the same source," and described them as including "a general explanation for the limitations provided therein." (AR 30.) The ALJ accorded the opinions partial weight to the extent consistent with the objective medical evidence from the two relevant periods under consideration; that is, for the DIB claim, the period from the March 1, 2010 amended onset date through the August 31, 2010 DLI and, for the SSI claim, the period from June 27, 2011, twelve months prior to the SSI application, through the date of the decision. (AR 23 and AR 30 (citing 20 C.F.R. § 416.335 (SSI "is not payable prior to the month following the month in which the application was filed").) She found the opinions to support a finding plaintiff had the same severe impairments during those time periods. The ALJ noted the opinions were provided prior to the amended onset date and stated, because they were provided to the Department of Social & Health Services (DSHS), they were "not binding on Social Security." (*Id.* (citing 20 C.F.R. §§ 404.1504, 416.904).)

The ALJ did not identify either Dr. Laughery or Patalagoyti by name and, as reflected above, misconstrued the opinions as coming from the same medical source. Contrary to plaintiff's suggestion, the record provides confirmation of Patalagoyti's credentials and her proper classification as an "other source." (AR 389, 402 ("Diana Patalagoyti BA MHP").) The record reflects Dr. Laughery saw plaintiff on two occasions in October 2008 in relation to her request for a DSHS evaluation and, in December 2008, referred plaintiff to physical therapy (PT). (AR 547-48 (October 14, 2008: plaintiff appeared for DSHS evaluation but did not bring paperwork), AR

549-50 (October 28, 2008: "Did [physical evaluation] today and now completed."), AR 628 (PT referral), and AR 627, 633 (December 2008 and March 2009 PT evaluation reports directed to Dr. Laughery).)

The Court herein assumes, without deciding, that Dr. Laughery is properly considered a treating source.[4] The Court further finds any error in the failure to properly identify the sources of the opinions harmless given the provision of specific and legitimate reasons supported by substantial evidence for according the opinions only partial weight. *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted).

In October 2008, Dr. Laughery found plaintiff limited for a period of six months and stated she needed to attend a work hardening program for her neck and back and a mental health evaluation. (AR 411.) The only other narrative content included on the DSHS form completed by Dr. Laughery included the identification of plaintiff's depression, that the "[p]hysical eval[uation] showed back dysfunction", and that plaintiff has "multiple somatic complaints along with her major back & neck pain complaints." (AR 410.) In April 2009, Patalagoyti described plaintiff's emotional issues, identified specific limitations as including "poor ability to regulate emotions,

---

[4] A treating source is an acceptable medical source who provided medical treatment or evaluation and has or had an "ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (applicable to claims filed before March 27, 2017). The Social Security Administration (SSA) generally considers an ongoing treatment relationship to exist when a claimant saw a source "with a frequency consistent with acceptable medical practice for the type of treatment and/or evaluation required" for a medical condition, and may consider such a relationship to exist when treatment or evaluation occurred "only a few times or only after long intervals (e.g., twice a year) . . . if the nature and frequency of the treatment or evaluation is typical" for the condition. (*Id*.) An ongoing treatment relationship does not exist if the relationship is not based on the "medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [a] claim for disability." (*Id*.) In such a case, the SSA considers the source to be nontreating.

ORDER
PAGE - 7

and to concentrate on task[,]" determined plaintiff did not "[i]n this moment" have the "stabilization required to attend classes, or activities that suppose ability to concentrate – think clearly[,]" and limited her to sedentary work due to chronic back pain. (AR 380.) Patalagoyti was "unable to answer" the question of how long plaintiff's condition would likely limit her ability to work, attached a mental health treatment plan, and stated plaintiff needed to keep working on her back pain, get the right psychiatric medication, and was "working on that" with a nurse practitioner. (AR 381.)

The ALJ found the record to contain objective medical evidence demonstrating plaintiff's ability to perform light work generally, with additional exertional and environmental limitations as set forth in the RFC. (AR 28.) The ALJ noted the demonstration of few musculoskeletal abnormalities on physical examinations beyond occasional tenderness, paravertebral muscle spasms, and reduced range of motion in the lumbosacral spine generally; plaintiff's ability to walk without reported difficulty at July 2013 and March 2015 examinations; the demonstration of full strength and range of motion in the upper and lower extremities bilaterally; and a December 2014 MRI showing some mild disk bulging, mild stenosis, and some facet atrophy. (*Id*. (citations to record omitted).) Considering this evidence in conjunction with plaintiff's obesity, the ALJ limited plaintiff to light work with additional standing and walking limitations, and included other limitations in relation to reports of greater symptomology in the right leg, exacerbation of symptoms with extreme cold, reported side of effects of drowsiness and fatigue, and the prescription of narcotic medications. The ALJ clarified that the objective evidence of record, particularly from consultative medical examinations, did not support finding plaintiff had any postural limitations or additional physical limitations. (*See also* AR 29 (describing medical evidence demonstrating plaintiff's ability to perform work within the RFC's psychological

limitations, including evidence from mental status examinations, evidence of situational stressors, admission of improvement with prescribed medications, and observations of treating sources).)

The ALJ considered the opinions of non-examining physicians Drs. Rubio and Stevick. (AR 150-51, 177-88.) She noted their particular familiarity with Social Security disability programs and requirements given their status as Disability Determination Services medical consultants. (AR 30.) The ALJ accorded significant weight to their shared opinion of a limitation to light work generally, including walking and standing for six hours cumulatively, and found it accounted for examination findings, medical imaging, and plaintiff's obesity. She accorded little weight to the assessment of a six-hour sitting and other postural limitations, pointing to the few physical abnormalities demonstrated on examination and the absence of supportive examination findings. The ALJ accorded little weight to Dr. Rubio's opinion there was insufficient evidence to determine the issue of disability between the amended onset date and the DLI. She noted his inability to consider all of the evidence available at the hearing level, including plaintiff's testimony and the 2008 and 2009 DSHS opinions, and found sufficient evidence to determine disability prior to the DLI, but insufficient evidence to find plaintiff disabled. (*Id*. (finding same with respect to opinions of psychological consultants).)

The ALJ also considered the opinion of consultative medical examiner Dr. Phan. In July 2013, Dr. Phan opined plaintiff could sit up to eight hours cumulatively, stand and walk up to six hours cumulatively, had no manipulative limitations, and should avoid frequent bending, stooping, twisting, turning, and heavy lifting, but could lift forty pounds occasionally and twenty pounds frequently. (AR 634-36.) The ALJ assigned Dr. Phan's opinions significant weight, as they were consistent with his examination findings, but found plaintiff further limited in her ability to lift and without the need for the postural limitations assessed. (AR 32.)

Plaintiff questions the ALJ's assumption as to the qualifications and expertise of Drs. Rubio and Stevick. (*See* Dkt. 14 at 6.) However, non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims. 20 C.F.R. §§ 404.1513a, 416.913a; SSR 17-2p (effective March 27, 2017; replacing SSR 96-6p). While not alone sufficient to justify the rejection of the opinion of an examining or treating physician, *Lester*, 81 F.3d at 831, the opinion of a non-examining physician may constitute substantial evidence when consistent with other independent evidence in the record, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001). In this case, the ALJ reasonably relied, in part, not only on the opinions of the non-examining physicians, but also on the examination findings and opinion of Dr. Phan.[5]

Plaintiff also denies the relevance of the fact the opinions of Dr. Laughery and Patalagoyti predated the amended onset date, claiming no evidence her condition improved after that date and contending it worsened over time. An ALJ may, however, consider the fact a medical opinion predates the time period under consideration, as well as the estimated length of assessed limitations. *See, e.g., Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."; affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of a claimant's "'long term functioning'"). *See also* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"); *accord* 20

---

[5] As the Commissioner observes, plaintiff does not raise a challenge to the ALJ's assessment of her symptom testimony, but does take issue with the evaluation of her subjective symptoms by the non-examining State agency physicians. (*See* Dkt. 14 at 10-12.) The Court herein considers the challenge specifically raised by plaintiff, namely, the ALJ's assessment of the medical opinion evidence. *See generally Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity).

ORDER
PAGE - 10

C.F.R. §§ 404.1505, .1509, 416.905, .909. An ALJ further properly considers inconsistency between medical opinions and the objective medical evidence of record, as well as the provision of minimal evidence and explanation in support of opinions rendered. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927 (c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."; "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion.") (applicable to claims filed before March 27, 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions). *See also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

In this case, the ALJ rationally interpreted the objective medical evidence to be inconsistent with a limitation to sedentary work. Plaintiff's reliance on x-ray and MRI evidence showing largely mild or slight abnormalities and on two treatment notes does not undermine the substantial evidence support for the ALJ's decision. (*See* Dkt. 14 at 7-8 (citing AR 753, 757 (March and April 2015 treatment notes from nurse practitioner Abby Scott describing plaintiff's antalgic gait and requirement of a four-point walker and back brace)); and AR 27 (giving little weight to the opinion plaintiff needed a four-point walker given the inconsistency with Scott's own examination findings from March 2015, as well as Dr. Phan's examination findings).) Nor did the ALJ unreasonably consider the dates, length of assessed limitations, and the general nature of the medical opinions rendered. Plaintiff fails to demonstrate error in the ALJ's partial reliance on opinion evidence from Drs. Rubio, Stevick, and Phan, and the rejection of the sedentary assessment of Dr. Laughery

and Patalagoyti.

## Mental RFC Assessment

Plaintiff avers error in the ALJ's failure to consider diagnoses of depression and personality disorder. She questions why the ALJ included affective disorder in the place of depression, despite the fact this diagnosis exists only in the reports of non-examining State agency psychologists Drs. Thomas Clifford and Bruce Eather, as well as why Dr. Eather's report provides merely a verbatim recitation of the assessment of Dr. Clifford. (*See* AR 132-33, 148-49, 175-76.) Plaintiff states that the ALJ wholly ignored diagnoses of personality disorder or personality features in the record. (*See* AR 639, 641.) She also points to the June 2013 consultative evaluation by Dr. Owen Bargreen (AR 534-39) as consistent with her testimony as to her activities of daily living and symptoms.

Depression is a form of an affective disorder, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (version of regulation in effect at the time of the ALJ's decision), and was properly considered by the ALJ. Neither plaintiff's reported history of a personality disorder (AR 639, 641, 643, 648, 651), nor the diagnosis of bipolar disorder by other source Hyesoon Choi, ARNP[6] (AR 640, 642, 644, 649, 652), sufficed to establish the existence of a medically determinable or severe impairment. *See* 20 C.F.R. §§ 404.1521, 416.921 (a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source[]" and not by a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]"; once a medically determinable impairment is established, it is determined whether the impairment is severe), and §§ 404.1522, 416.922 (an impairment is deemed non-severe where it "does not significantly limit

---

[6] The new regulation including advanced practice registered nurses as acceptable medical sources was not in effect at the time of the ALJ's decision. *See supra* n. 3.

ORDER
PAGE - 12

your physical or mental ability to do basic work activities.")  Moreover, even if one or more additional severe impairments could be said to exist, plaintiff does not identify or provide support for any associated error at step three or beyond.  *Cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any error in failing to find impairment severe at step two is properly deemed harmless where limitations associated with the impairment are considered at step four).

Plaintiff likewise fails to demonstrate error in relation to medical opinion evidence.  Dr. Bargreen described plaintiff's reports and observations from the examination; opined plaintiff had "some moderate mental health issues which may prevent her from working at this time."; noted her mental health treatment appeared to be helping her to better cope with depression and anxiety; and stated:  "It is not entirely clear why the client has not been working or has not attempted to work, at least on a part-time basis, for many years. She cares for her two children."  (AR 538-39.) The ALJ rationally construed Dr. Bargreen's opinion as "vague and equivocal," and "providing little insight" into plaintiff's ability to perform work-related functions.  (AR 31.)  She reasonably accorded the opinion only partial weight in light of this fact, while allowing for some weight due to the examination conducted and the relative consistency between the opinion and the objective evidence of record.

The ALJ also reasonably accorded partial weight to the opinions of Drs. Clifford and Eather. She found their general opinion as to plaintiff's ability to perform simple and routine tasks, with limited public contact, consistent with the examination findings of record, but discounted their opinions of abilities exceeding the assessed RFC based on an absence of detailed explanations or elaborations.  (AR 31 (finding evidence at hearing level suggested plaintiff "is somewhat more limited in her ability to interact socially and understand, remember and carryout tasks")).  There is, finally, no basis for concluding Dr. Eather failed to properly perform his role at the

reconsideration level. (*See* AR 169-83.)  The ALJ's consideration of plaintiff's mental RFC assessment and the medical opinions has the support of substantial evidence.

<u>VE Hypotheticals</u>

Plaintiff argues the ALJ's failure to properly consider the medical evidence necessarily resulted in flawed hypotheticals proffered to the VE.  The Court finds no error in the consideration of plaintiff's impairments or the medical opinions and, therefore, no error in the corresponding hypotheticals.  This restating of plaintiff's argument does not establish error at step five.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>3rd</u> day of October, 2017.

Mary Alice Theiler
United States Magistrate Judge